UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

NICHOLAS TYRONE LEE,

       Petitioner,

v.                                     Case No.  5:12cv234/MP/CJK

MICHAEL D. CREWS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 7).  Respondent filed an answer (doc. 23), submitting relevant portions of the state court record (doc. 25).  Petitioner replied.  (Doc. 27). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the amended petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

By Indictment filed December 4, 2008, petitioner was charged in Bay County Circuit Court Case No. 08-CF-3811, with the First Degree Felony Murder of Vishnukumar Patel (Count I),  Attempted Robbery with a Firearm of Mr. Patel (Count II), and Possession of Marijuana More Than 20 Grams (Count III).  (Doc. 25, Ex. A).[1] The crimes occurred on November 13, 2008.  Petitioner went to trial on April 14-15, 2009.  (Ex. B).  The State's theory of prosecution was that petitioner, at the behest of his girlfriend, planned and attempted to rob the owner of a local convenience store Mr. Patel, that during the attempted robbery petitioner shot and killed Mr. Patel, and that following the incident petitioner disposed of the murder weapon by trading the gun for marijuana.  (Ex. B, pp. 15-23, 329-338, 343-354).  Petitioner admitted that he was the person who killed Mr. Patel.  Petitioner's theory of defense was that he was aware Mr. Patel had loaned money to his girlfriend in the past; that he initially intended to rob Mr. Patel but at the last minute decided to simply ask Mr. Patel to loan him and his girlfriend more money; that when Mr. Patel told petitioner he could not loan any money an argument ensued; and that petitioner, having been told in the past that Mr. Patel carried a weapon, thought Mr. Patel was going to shoot him so he shot Patel first.  (Ex. B, pp. 266-309).  Defense counsel urged the jury to accept petitioner's story and to find:  (1) that petitioner did not intend to rob Mr. Patel at the time he confronted Patel and (2) that the killing of Mr. Patel was not a first-degree felony murder, but at most a manslaughter or a second-degree murder.  (Ex. B, pp. 23-28, 338-343).  The jury found petitioner guilty of all counts as charged.  (Ex. B, pp.

---

[1]All references to exhibits are to those provided at Doc. 25, unless otherwise noted.  If a cited page has more than one page number, the citation is to the "Bates stamp" page number.

363-365; Ex. C).  On April 23, 2009 the court adjudicated petitioner guilty of the offenses and sentenced petitioner to concurrent terms of life in prison without parole on Count I, life in prison on Count II, and five years imprisonment on Count III. (Exs. D, E).  An amended judgment and sentence was entered on June 4, 2009, correcting (by deleting) language in the sentence on Count II that erroneously indicated petitioner received life in prison *plus 98 days*.  (Ex. F).  Petitioner's judgment of conviction was affirmed on direct appeal, per curiam and without a written opinion, on January 22, 2010.  *Lee v. State*, 25 So. 3d 1227 (Fla. 1st DCA 2010) (Table) (*See* Ex. J).

On March 19, 2010, petitioner filed in the trial court a motion to mitigate sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. K).  The trial court denied the motion on April 13, 2010.  (Ex. L).

On February 17, 2011, petitioner filed in the state circuit court a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. M).  The circuit court struck petitioner's motion as facially insufficient with leave to amend within thirty days. (Ex. N).  Petitioner filed an amended Rule 3.850 motion on April 7, 2011.  (Ex. O).  The state circuit court summarily denied relief without an evidentiary hearing.  (Ex. P).  Petitioner appealed.  (Ex. Q).  The First DCA per curiam affirmed on May 30, 2012, without a written opinion.  *Lee v. State*, 90 So. 3d 728 (Fla. 1st DCA 2011) (Table) (*See* Ex. R).  The mandate issued June 26, 2012. (Ex. R).

Petitioner filed his original federal habeas petition in this court on July 20, 2012.  (Doc. 1, p. 26).  Petitioner's amended petition, filed on October 19, 2012, raises nine grounds for relief.  (Doc. 7).  Respondent asserts that each of petitioner's

grounds for relief fails because the state courts' rejection of petitioner's claims was neither contrary to, nor involved an unreasonable application of, clearly established federal law.  (Doc. 23, pp. 14-53).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate

conclusion, not the reasoning that led to it.   *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).   The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state

court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").   Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

All of petitioner's grounds for relief assert that petitioner was denied his constitutional right to the effective assistance of counsel due to various acts or omissions of trial counsel.  In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims.   The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner.  *Id.*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690, 104 S. Ct. at 2066.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).   "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Id.* at 694, 104 S. Ct. at 2068.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*, 131 S. Ct. at 792.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

Ground One          "Whether The State Courts Erred When Den[y]ing Relief On
                    Petitioner's Claim Of Ineffective Assistance Of Counsel For
                    Failing To Challenge Or Strike A Juror, By Reaching A
                    Conclusion Opposite To That Reached By The United States
                    Sumpreme [sic] Court On A Question Of Law, Or By The State
                    Court Deciding The Issue Differently Than The United States
                    Supreme Court On A Materially Indistinguishable Fact, Thereby
                    Violating Petitioner's 5th, 6th, and 14th Amendments Guaranteed
                    By The United States Constitution."  (Doc. 7, p. A-1).

Petitioner claims trial counsel was ineffective for failing to challenge or strike Juror Chance, whose response during voir dire indicated that she had read in the newspaper about the incident for which petitioner was on trial and that it made her cry.  (Doc. 7, pp. A-1 - A-2).  Petitioner argues that Juror Chance's response raised doubt about her impartiality and that counsel should have challenged her on that basis.

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground One of his amended postconviction motion and by appealing the denial of relief to the First DCA.  (Doc. 23, p. 15).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of clearly established federal law, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  (*Id*., pp. 18-22).

Review of State Court Decision

The state circuit court began its analysis by correctly identifying the *Strickland* standard as the legal principle governing all of petitioner's ineffective assistance claims.  (Doc. 25, Ex. P, p. 75).  The state court denied relief on Ground One as

follows:

In Ground One, the Defendant alleged ineffective assistance of counsel for failing to challenge or strike a biased juror after she revealed that she could not be fair and impartial.  More specifically, the Defendant alleges that an unnamed juror stated that every time she read about the crime in the newspaper or saw footage on TV, she would get so upset and cry.  The Defendant claims that his attorney did not challenge this juror or strike her based on her prior knowledge of the crime.  He also states that he was prejudiced by this failure, because she was involved in the jury's discussion of the evidence, and her emotions influenced the jury to convict him.  The defendant acknowledges that the juror did state that she could base her decision on the evidence presented at trial, but he argues that this does not excuse his attorney's failure to challenge or strike her.

Although the Defendant does not specify by name the alleged impartial [sic] juror, a review of the jury selection transcript confirms that Juror Chance stated during voir dire that she had cried when she read about the murder in the newspaper.  (*See* Jury Selection Transcript at 26.)  However, when she was asked whether she could put aside what she had read in the paper and base[ ] her decision solely on the testimony and physical exhibits at trial, Juror Chance state that she could do that.  (Tr. at 26.)  The prosecutor also explained that the newspaper may not always have the correct facts, to which Juror Chance stated "I read some things that I know are not accurate in there."  (Tr. at 26-27.)  She again affirmed that she could put the story out of her mind and start with a clean slate.  (Tr. at 27.)  At side bar, defense counsel consulted with the Defendant prior to accepting the jury, which included Juror Chance.  The Defendant told counsel that the entire jury was acceptable to him, and then confirmed this with the Court.  (Tr. at 74-75.)

Defense counsel was not ineffective for failing to challenge Juror Chance, as she clearly stated that she could lay aside her prior exposure to the case and render a verdict based on the evidence at trial.  *See Owen v. State*, 986 So. 2d 534, 550 (Fla. 2008); *see also Dillbeck v. State*, 964 So. 2d 95, 102 (Fla. 2007) ("It is sufficient if the juror can lay aside his

impression or opinion and render a verdict based on the evidence presented in court.") (quoting *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S. Ct. 1639, 1643, 6 L. Ed. 2d 751 (1961)).  Furthermore, the Defendant even agreed to keep her on the jury.  To the extent that the Defendant claims that there was doubt or uncertainty about whether this juror could remain impartial, this is insufficient to warrant relief.  *See Owen*, 986 So. 2d at 550 (a defendant must show that an actually biased juror sat on his jury, not merely that doubt existed about a juror's ability to remain impartial).  Since the Defendant has not demonstrated that an actually biased juror sat on his jury, he has failed to establish the prejudice prong of *Strickland*, and thus this claim is denied.  *See Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007).

(Doc. 25, Ex. P, pp. 76-77).  The state circuit court attached to its order the transcript of jury selection.  (*Id.*, pp. 97-176).  The First DCA summarily affirmed.

The transcript of jury selection reveals that during voir dire, the prosecutor, addressing the venire, gave a brief description of the case "to see if you know any of the particular facts or circumstances about this case, either because you live in the area or because you know some of the people involved in the case." (*Id.*, pp. 120-21). The following exchange followed:

MR. BASFORD [Prosecutor]:  Ms. Chance, you also indicated that you may know some –

SARAH CHANCE:  It's just I read my newspaper every word in it every morning and I cried through everything I read about that.  It was just really, I didn't know anybody involved, I was just real touched by it all.

MR. BASFORD:  You feel like you may know some of the facts from what you've read in the newspaper or seen on television or in some other form of media, is that right?  My question to you, and I'll ask everybody that, if they recall something about that, but do you think you could put aside what you read and base your decision solely on what you're going to hear in this courtroom in the form of testimony and

physical exhibits?

SARAH CHANCE:  I could do that.

MR. BASFORD:  Because sometimes the newspapers get it right and sometimes they don't.

SARAH CHANCE:  I read some things that I know are not accurate in there.

MR. BASFORD:  Okay.  In a court of law, you know, you're going to be asked to be the judge of the facts and only the facts that are presented to you in the courtroom.  And that's what I'm asking you.  You could just put that out of your mind and start with a clean slate?

SARAH CHANCE:  I could do that.

(Ex. P, pp. 122-23).  Defense counsel later revisited the issue with Ms. Chance:

MR. SMITH [Defense counsel]:  . . . Ms. Chance, you . . . indicated that you read about it in the paper, you actually got emotional reading about it.  Are you going to get emotional again when you hear about it here in the courtroom?

SARAH CHANCE:  No.

MR. SMITH:  You don't think so?  Okay.  Anybody else think that you, we have heard from a couple of people I think we know don't want to, really can't serve because they're too close to the situation.   But anybody else feel that way right now?  Okay.

(*Id.*, pp. 161-62).  After voir dire, the court conducted a conference at sidebar with the prosecutor, defense counsel and petitioner.  The court identified three members of the jury panel that he felt should be removed for cause, and the parties agreed.  (*Id.*, p. 169).  The parties made no additional cause challenges.  (*Id.*).  After defense counsel used three peremptory challenges (*id.*, p. 169), and the State used one (*id.*, p. 170), the

parties came to an agreement on the twelve jurors. (*Id*., p. 170). Defense counsel consulted with petitioner and informed the judge: "Mr. Lee said those jurors are acceptable to him." (*Id*., p. 171). The judge read the names of the jurors (including Ms. Chance) to petitioner and asked him if he was satisfied with those twelve jurors. (*Id*., p. 171). Petitioner responded, "Yes, sir." (*Id*.).

Petitioner argues that it was unreasonable for the state court to deny relief based on Ms. Chance's response that she could render a verdict based solely on the evidence presented at trial, because "[n]umerous federal courts has askno[w]ledged that a person cannot just leave their thoughts and beliefs at the door." (Doc. 7, p. A-2). Petitioner further maintains that it was unreasonable for the state court to rely on his [petitioner's] consent to the jury panel, because "[p]etitioner was ignorant to the law and depended fully on trial counsel to make the wise and proper legal decisions." (*Id*.).

Viewing the record in its entirety, it was not unreasonable for the state courts to conclude that petitioner failed to establish deficient performance or prejudice under *Strickland*. Juror Chance admitted to some exposure to the case (via newspaper) and to having been affected by it, but she also stated that she knew some things reported in the newspaper were not accurate, that she could put the article out of her mind and listen to all the evidence with a blank slate, and that she would base her decision solely on the testimony and physical evidence presented at trial. In addition, petitioner not only acquiesced in, but affirmatively approved counsel's decision to select Chance as a juror. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."); *see also, e.g., Price v. Sec'y, Dep't of Corr.*, 558 F.

App'x 871, 872-73 (11th Cir. Mar. 6, 2014) (holding that "it was not an unreasonable application of clearly established federal law for the Florida courts to conclude that Price could not argue that counsel had been ineffective for failing to strike a juror that Price had approved.").   Petitioner cites no precedent of the Supreme Court establishing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two            "Whether The State Court's Denial Of Petitioner's Ineffective Assistance Of Counsel Claim Was In Error Where The Court 'Completely Failed' To Address The Issue Brought When The Issue Itself Was The Constitutional Violation Of Due Process." (Doc. 7, p. A-3).

Petitioner claims trial counsel was ineffective for "failing to object to the State introducing evidence without first establishing a sufficient predicate of substantial similarities between a prior incident and the incident at hand."  (Doc. 7, p. A-3).  The evidence to which petitioner refers is two shell casings found at the scene of the crime.  Petitioner explains:  "Due process requires the state to properly establish a sufficient predicate of substantial similarities between a prior incident and the current incident.  The record clearly reflects that the State failed to do so, thus violating Petitioner's right to due process.  The record also reflects that trial counsel failed to object to that failure thus, ineffective assistance of counsel."  (*Id*., p. A-4).  Petitioner complains that "the state court 'utterly failed' to address this due process violation."

(*Id.*, p. A-3).

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground Two of his amended postconviction motion and by appealing the denial of relief to the First DCA.  (Doc. 23, pp. 22-23).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of clearly established federal law, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  (*Id.*, pp. 23-27).

The background of this claim is set forth more fully in petitioner's amended postconviction motion.  There, petitioner asserted the following.  At trial the State introduced evidence of three shell casings recovered from the crime scene.  Two casings were weathered and the third was bright and shiny.  All of the casings were discharged from the firearm petitioner used to kill Mr. Patel, but petitioner was responsible for only one of the casings.  The other two shell casings were from an incident that occurred one week prior when Timothy Dodson possessed the firearm.  Dodson and petitioner had gone to Mr. Patel's store to purchase gas, the store was closed, Dodson attempted to persuade Mr. Patel to reopen it, and Dodson discharged the firearm during the course of his exchange with Mr. Patel.  (Ex. O, pp. 52-53).  Petitioner argued that by introducing evidence of the two additional shell casings, the State was attempting to mislead the jury into believing that petitioner fired more than one shot at Mr. Patel on the evening of November 13, 2008.  Petitioner argued that defense counsel was ineffective for failing to object to evidence of the two additional shell casings as irrelevant and unfairly prejudicial.  Petitioner contended that had

counsel objected, there was a reasonable probability the two shell casings would have been excluded and the jury (1) "would have believed petitioner had only fired the one shot in fear of his own life," and (2) "would have put more weight on Defendant's statement that he had abandoned the idea of robbing the victim and actually attempted to borrow the money." (Ex. O, pp. 53-54).

<u>Review of State Court Decision</u>

The state circuit court denied relief on petitioner's claim, as follows:

> In Ground Two, the Defendant alleges ineffective assistance of counsel for failing to object to evidence, namely three shell casings, that were introduced into evidence. The Defendant asserts that he fired only one shot on the night of the crime, yet there were three shell casings found around the body that were introduced into evidence at trial. He claims that the two weathered casings were from an incident that happened a week before the instant crime and prior to the defendant's possession of the firearm, and the State allegedly knew that these bullets were not fired by the Defendant. The Defendant asserts that counsel should have objected to the introduction of this evidence, since it was irrelevant and prejudicial to his case. The Defendant argues that the introduction of these casings prejudiced him because the jury would have put more weight on his testimony that he had fired only one shot that night. Had counsel objected to the introduction of these casings, the Defendant asserts that the evidence would have been excluded, and the jury would have believed that the Defendant had abandoned his intent to rob and was only attempting to borrow money from the victim.

> The Defendant has not provided any valid argument to preclude evidence of multiple bullets from the same gun being introduced at trial. At trial, Detective Koren Colbert testified about the crime scene and the evidence collected. She stated that they found three cartridge casings at the scene. (*See* Trial Transcript at 126.) She explained that two were found in the grass and were not shiny, while the other one was a different color, "brighter and a bit shinier." *Id.* Nonetheless, they were the same type of cartridge casing and made by the same manufacturer.

(Tr. at 126.)  The FDLE analyst testified that the bullets were fired by the firearm that law enforcement had recovered as the murder weapon. (Tr. at 225.)

Regardless of the Defendant's assertion, the State never argued that the Defendant shot the victim multiple times that night, and witness testimony established a single shot that particular night.  (Tr. at 107-112; 67-73).  However, it was established at trial that the Defendant had been planning to rob the victim for several weeks leading up to the incident. (Tr. at 33-37; 46-50; 279, 282.)   In addition, an employee of the convenience store testified that an incident had occurred a few nights before the murder in which gunshots were fired (Tr. at 104-05), and the investigating officer testified that he had responded to that incident the week before the murder (Tr. at 210-11.)  The Defendant admitted that he was present at the convenience store earlier in the week with the same gun, but asserted that his friend had shot at the victim in that instance. (Tr. at 284-288.)  Thus, this evidence was relevant to the case, and the Defendant has not alleged any grounds by which his attorney could have successfully challenged its admissibility.

In any case, the Defendant has not established prejudice, as there is not a reasonable probability that the jury would have believed that the Defendant had abandoned his attempt to rob the victim and was only trying to borrow money.  Not only was the Defendant's confession was [sic] introduced during the trial (Tr. at 167-179), multiple witnesses testified that the Defendant and his girlfriend had discussed robbing the victim during the weeks prior to an day of the shooting (Tr. at 33-37; 46-50).  In addition, an eyewitness testified to the altercation leading up to the shooting (Tr. at 107-112), and another witness placed the Defendant at the scene and provided incriminating statements that the Defendant intended to rob the victim (Tr. 67-73).  The Defendant even testified that he went to the store intending to rob the victim and admitted that he shot the victim.  (Tr. at 269-73; 282; 294; 306-309.) Thus, Ground two is denied.

(Ex. P, pp. 77-78).  The First DCA summarily affirmed.

Petitioner argues that he is entitled to federal habeas relief, because the state courts "failed to address the proper issue" of whether the State violated petitioner's due process rights when it introduced evidence of the two additional shell casings without first showing a substantial similarity between the prior shooting at the store and petitioner's subsequent shooting of Mr. Patel. (Doc. 7, pp. A-3 - A-4).  The court conducted the proper inquiry of determining whether petitioner provided a valid basis for counsel to object (whether on due process or other grounds), and determined petitioner had not, because the evidence was highly relevant and the State did not introduce it, or use it, to mislead the jury.   The state court's conclusion was reasonable given that all three cartridge casings were found in the vicinity of Mr. Patel's body, the casings were of the same type and same manufacturer, and all three were discharged from the firearm petitioner used to shoot Mr. Patel.  The state courts also concluded, reasonably, that petitioner failed to establish the jury would have had a reasonable doubt respecting his guilt of first-degree felony murder had counsel objected and obtained the unlikely ruling excluding evidence of the two additional casings.  *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068-69.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Two.

<u>Ground Three</u>          "<u>Whether The Trial Court Ruled Contrary To Or Applied An</u>
<u>Unreasonable Application Of Clearly Established Federal [Law]</u>
<u>When Denying Petitioner's Claims Of Ineffective Assistance Of</u>
<u>Counsel And Violation Of Due Process As Guaranteed By The</u>
<u>5th, 6th, and 14th Amendments Of The United States</u>
<u>Constitution.</u>"  (Doc. 7, p. A-4).

Petitioner claims counsel was ineffective for not properly preparing for and arguing his motion for judgment of acquittal on the possession of marijuana charge. Counsel argued that the State was required to establish, through expert testimony, the nature and weight of the substance petitioner possessed, and that the State's use of lay opinion was insufficient.  Petitioner asserts defense counsel's argument was deficient, because counsel did not have a copy of the "Florida Statute concerning the mand[a]tory due process procedure and the available case law supporting the argument."  Petitioner argues that had counsel been armed with the statute and case law, "the trial court would not have had to of taken the motion under advisement to obtain additional research on the subject."  (Doc. 7, p. A-5).

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground Three of his amended postconviction motion and by appealing the denial of relief to the First DCA.  (Doc. 23, p. 28).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of clearly established federal law, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  (*Id.*, pp. 28-31).

<u>Review of State Court Decision</u>

The state circuit court identified *Strickland* as the controlling legal standard and denied relief on petitioner's claim, as follows:

> In Ground Three, the Defendant alleges ineffective assistance of counsel for failing to be more articulate and properly prepared during his argument on a motion for judgment of acquittal. The Defendant states that his attorney moved for a judgment of acquittal on the drug charges. He claims that the officers were not qualified as expert witnesses and should not have been allowed to testify about the marijuana. He also asserts that counsel belittled the importance of the motion, by stating that it was "no big deal" and that he "hesitated to bring it up." Had counsel properly argued the motion, the Defendant claims that the Court would have had no choice but to dismiss Count III.
>
> At trial, defense counsel did move for a judgment of acquittal based on insufficient evidence to support Count III, possession of marijuana. (*See* Trial Tr. at 258.) He clearly stated that lay testimony was the only evidence establishing that the substance in question was marijuana, and that the State's witnesses were not qualified as experts on the subject. He also pointed out that he believed the State had just forgotten that the Defendant was charged with this drug offense, and noted that they had even forgotten to call their lab analyst to identify the substance as marijuana. (Tr. at 259.) The State explained that Captain Stanford testified to his training and experience as a narcotics officer, and that he was authorized to testify about the nature of the substance and its weight. *Id.* Defense counsel continued to argue that the witness still has to be qualified as an expert, and the evidence was not competent "absent a determination that they are experts." *Id.* at 261. The Court took the motion under advisement to obtain additional research on the subject. However, during the Defendant's testimony, he admitted that he had marijuana "way over 20 grams" in his possession. (Tr. at 276.) Thus, even if counsel's arguments had merit, the Defendant himself established the necessary element of the crime. Further, the Defendant has failed to establish that more preparation or eloquence in presentation would have changed the court's decision. Thus, Ground Three is

denied.

(Ex. P, pp. 78-79).  The First DCA summarily affirmed.

The state court's findings of fact are amply supported by the record.  Defense counsel's argument on the motion for judgment of acquittal was this:

> MR. SMITH [Defense counsel]:   [A]s to Count III I do think the evidence is insufficient to go to the jury on that.  Basically what we have is lay opinion testimony that the substance is marijuana.  You don't necessarily have to have a lab report but you do  have to have competent evidence that, yes, that material is marijuana.  Neither of the witnesses was qualified as an expert.  So that leaves us with lay opinion testimony that the substance taken was marijuana.  Now, I'm sure he's going to argue, well, the defendant said it was marijuana too in his statement.  But I don't know that that gets us past that evidentiary faux pas.  I think Larry just forgot to call the, I think he forgot that he charged him with possession of marijuana and forgot to get the lab analyst over here.
>
> THE COURT:  Was there weight testimony?
>
> MR. BASFORD [Prosecutor]:  There was testimony, yes, sir, the weight was testified by Mr. Bailey.  And then Mr. Stanford, Captain Stanford indicated that, yes, this was marijuana.  And I talked about his training and experience as a narcotics officer, if you will recall.  So, and there is case law that says officers can do that.
>
> THE COURT:  They can do that. You don't have to have a lab.
>
> MR. SMITH:  I agree.  But I think you have to qualify the officer as an expert, just asking him if you had duty as a narcotics officer isn't going to cut it there.  You know, like I said, it is no big deal but I got to make the motion.  I don't think they passed the evidentiary hurdle on that one.
>
> MR. BASFORD:  In the light most favorable to the state.
>
> THE COURT:  Well, I did hear the credentials referenced in kind of a

drive-by fashion and I don't know that there was ever a formal announcement that he could give opinion testimony as an expert. I'm not sure that is fatal to the state's case, however.

MR. SMITH: I think it is.

THE COURT: You think the court had to say he's an expert?

MR. SMITH: Yeah, I think you have to jump through those hoops. And he wasn't listed as an expert on the state's discovery so we would object on that. We would have had an [sic] Richardson issue anyway. You know, I hesitate to even bring it up but I have to and I think the evidence is insufficient.

THE COURT: Let's do this. I'll take the, that part of your motion under advisement and we will maybe get some additional research on the subject. If I can refine the issue, the issue is although there was predicate testimony on the witness' background dealing with narcotics and a positive identification by the witness that the substance was marijuana in excess of 20 grams without the benefit of any lab testimony, the issue is, was the court's failure to declare either Bailey or Stanford an expert witness so that they could give opinion testimony in the field of narcotics identification fatal to the state's prima facie case.

MR. SMITH: Right. I don't think it is competent evidence, absent a determination that they are experts.

THE COURT: So that would be the one issue that we will address at some point before I start reading instructions to them.

(Ex. B, pp. 258-260). After the defense rested and prior to the court's instructing the jury, defense counsel inquired, "For the record, my motion of judgment of acquittal is denied on Count III?" (Ex. B, p. 312). The court responded, "Correct," without explanation. (*Id*.).

The state courts did not unreasonably apply *Strickland* in rejecting petitioner's claim.  Defense counsel was more than reasonably articulate in arguing the motion. Petitioner made no showing whatsoever that had counsel showed the trial judge a copy of Fla. Stat. § 90.702 (the statute governing testimony by experts) and presented the judge with case law (which petitioner does not identify) either in lieu of, or in addition to, the trial judge conducting his own research, there is a reasonable probability the judge would have reached a different conclusion and granted a judgment of acquittal on Count III.  Petitioner's claim fails for the additional reason that the State presented sufficient evidence of the identity and weight of the marijuana – through Captain Stanford's testimony, petitioner's statements to Stanford, and Investigator Bailey's testimony (Ex. B, pp. 152-153, 161-180, 197-198) – to survive the defense's motion for judgment of acquittal.  *See Sinclair v. State*, 995 So. 2d 552, 555 (Fla. 3d DCA 2008) ("[T]he courts of this state – including our own – have long been willing to allow experienced law enforcement personnel to identify substances such as marijuana without resorting to chemical analysis.") (citing cases); *Pama v. State*, 552 So. 2d 309, 311 (Fla. 2d DCA 1989) ("The state may prove the identity of a controlled substance by circumstantial evidence such as the substance's appearance, odor, and packaging, by the circumstances under which the substance was seized, the manner by which the substance was being transported, a person's on-the-scene remarks identifying the substance, and circumstances surrounding the sale or use of the substance.") (citations omitted).

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to

federal habeas relief on Ground Three.

Ground Four          "Whether The State Courts Denial Of Petitioner's Claim Of
                     Ineffective Assistance Of Counsel For Asserting A Do Nothing
                     Stradegy [sic] That Resulted In An Actual Or Constructive Denial
                     Of Counsel Is Contrary To, Or An Unreasonable Application Of
                     Clearly Established Federal Law As Set Forth By The United
                     States Supreme Court Accpecially [sic] When The State Court
                     Completely Skirted The Specific Issue." (Doc. 7, pp. A-6, A-7).

       Petitioner claims defense counsel was ineffective because he "utterly failed to
exert any effort whatsoever into any type of investigation."  (Doc. 7, p. A-7).
Petitioner does not identify any additional witnesses or evidence that would have
been discovered through further investigation, but instead bases his claim on
counsel's failure to interview the State's witnesses "for a possible chance in their
terms of the event and/or to depos[e] any of them."  (*Id*.).  Petitioner asserts that
counsel's failure to interview and depose the State's witnesses "proves without a
doubt that trial counsel relied solely on the prosecutor's file to prepare a defense."
(*Id*., pp. A-7, A-8).  Petitioner argues that because his claim involves an allegation
that counsel adopted a "do nothing" strategy, prejudice is presumed and he is not
required to establish actual prejudice under *Strickland*.  (*Id*., p. A-8).

       Respondent concedes that petitioner exhausted this claim by presenting it to
the state circuit court as Ground Four of his amended postconviction motion and by
appealing the denial of relief to the First DCA. (Doc. 23, p. 31).  Respondent asserts
that petitioner is not entitled to federal habeas relief, because the state courts'
rejection of petitioner's claim was neither contrary to, nor an unreasonable
application of clearly established federal law, nor resulted in a decision that was
based on an unreasonable determination of the facts in light of the evidence

presented.  (*Id.*, pp. 32-33).

<u>Review of State Court Decision</u>

The state circuit court denied relief on petitioner's claim, as follows:

> In Ground Four, the Defendant alleges ineffective assistance of counsel for failure to investigate witnesses or take depositions in the case.  He claims that his attorney relied solely on the State's file as his entire investigation.  The Defendant states that counsel had a "do-nothing" strategy and argues that prejudice should be presumed since he was effectively denied counsel altogether.  However, the Defendant does not identify the witnesses that counsel should have interviewed or deposed, fails to describe the information that counsel would have discovered that he did not already know, and does not allege how this information would have aided in his defense.  Thus, the Defendant has failed to establish prejudice under *Strickland*.  *See Ferrell v. State*, 29 So. 3d 959, 969-70 (Fla. 2010) (when failure to depose witnesses is alleged in the context of an ineffective assistance of counsel claim the defendant must show how this failure harmed him by explaining "a specific evidentiary matter to which the failure to depose witnesses would relate.") (*quoting Davis v. State*, 928 So. 2d 1089, 1117 (Fla. 2005)).

(Ex. P, p. 79).  The First DCA summarily affirmed.

The state courts applied the appropriate prejudice standard.  Prejudice is presumed if, for example, defense counsel is absent at a critical stage of the proceeding or fails to challenge the prosecutor's case.  *United States v. Cronic*, 466 U.S. 648, 659-60, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).  Neither of those circumstances exists here.  Counsel was present through every moment of the trial, and there is no suggestion that he was prevented from assisting petitioner in any critical stage of the trial.  The second *Cronic* exception is inapplicable because counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.  To the contrary, defense counsel consistently opposed the

prosecution's case.  Counsel reviewed all of the discovery.  Counsel questioned the venire members.  Counsel used peremptory challenges to remove three potential jurors.  Counsel gave an opening statement.  Counsel made numerous objections. Counsel cross-examined key State's witnesses, including law enforcement.  Counsel moved for a judgment of acquittal on the possession charge.  Counsel gave a closing argument urging the jury to find petitioner guilty of the lesser offense of second degree murder or manslaughter.  Counsel's strategy was to pursue a defense that even though the State's witnesses testified that petitioner and his girlfriend planned ahead of time for petitioner to rob Mr. Patel and that that was petitioner's intent when he approached Mr. Patel with a gun that night, petitioner abandoned his intent to rob Mr. Patel while waiting for Patel to come out of the store, and shot him only after Patel appeared to be reaching for a gun after petitioner requested money.  Counsel pursued that defense the best he could with what he had to work with.  Counsel subjected the prosecution's case to meaningful adversarial testing, not just on occasion but throughout the trial.

Counsel's alleged error  – failing to interview or depose the State's witnesses – is judged under the *Strickland* standard, not the *Cronic* standard.  *Bell v. Cone*, 535 U.S. at 697-98, 122 S. Ct. at 1851-52 (holding that the failure of an attorney to perform specific tasks was insufficient for the second *Cronic* exception and should be judged under the *Strickland* standard); *Castillo v. Fla, Sec'y of DOC*, 722 F.3d 1281, 1288-1293 (11th Cir. 2013) (holding that prejudice would not be presumed from any deficiency in trial counsel's performance in failing to notice and object to juror's participation in deliberations and vote with other jurors for conviction despite having been absent for full day of three-day trial; counsel did not remain silent

throughout trial, he did not utterly fail to fulfill any of his obligations as counsel, he was not as good as absent throughout trial, and he did not stand silently by as the court directed verdict against his client); *see also, e.g., Jenkins v. Sec'y, Dep't of Corr.*, 520 F. App'x 871, 873 (11th Cir. 2013) (holding that the *Stricklan*d standard, not *Cronic*, applied to habeas petitioner's claim that trial counsel was ineffective for failing to request a particular jury instruction); *Bogan v. Thompson*, 365 F. App'x 155, 157 (11th Cir. 2010) (holding that state court correctly identified *Strickland* as the controlling legal standard for habeas petitioner's claim that counsel was ineffective because he did not interview any of the State's witnesses before trial and instead merely reviewed the witness statements provided in discovery).

The state court determined, reasonably, that petitioner failed to establish he was prejudiced by counsel's failure to interview or depose the State's witnesses. Petitioner points to no specific instance in which counsel was surprised by a witness's testimony or failed to perform an effective cross-examination. Apart from the bare assertion that failure to interview witnesses reflects inadequate preparation, petitioner does not offer any argument against the adequacy of counsel's preparation. Thus, petitioner has not shown that the state court applied *Strickland* unreasonably.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court precedent. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five         "Whether The State Court's Denial Of Petitioner's Claim Of Ineffective Assistance Of Counsel Where Trial Counsel Failed To Investigate Into Possible Missing Evidence From The Crime Was Misconstrued And Contrary To Federal Law." (Doc. 7, p. A-9).

Petitioner claims counsel was ineffective for failing to investigate the possibility that evidence (a firearm) was missing from the crime scene. Petitioner alleges counsel was aware that there was a possibility Mr. Patel was armed at the time petitioner shot him, that numerous individuals were standing around Mr. Patel's body when law enforcement arrived on the scene, and that Mr. Patel's cell phone was possibly taken from Mr. Patel by one of those individuals. Petitioner argues that a competent attorney, armed with this information and with petitioner's version of events (that petitioner believed Mr. Patel was reaching for a gun when petitioner shot him), would have investigated the possibility that Patel had a handgun at the time petitioner shot him, and that the handgun had gone missing. Petitioner suggests counsel's investigation should have included, at a minimum, interviewing the officers who were at the scene about a handgun and obtaining the names of the individuals who were standing around Mr. Patel's body. Petitioner asserts that had a handgun been discovered, counsel could have formed a strategy of self-defense.

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground Five of his amended postconviction motion and by appealing the denial of relief to the First DCA. (Doc. 23, p. 34). Respondent asserts that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of clearly established federal law, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented.  (*Id*., pp. 34-37).

Review of State Court Decision

The state circuit court denied relief on petitioner's claim, as follows:

In Ground Five, the Defendant alleges ineffective assistance of counsel for failing to investigate the removal of certain evidence from the crime scene.  He states that his defense at trial was self-defense, as he believed the victim was reaching for a gun.  The Defendant claims that the first officer on the scene stated that there were numerous individuals standing around the victim.  Detective Colbert stated that the victim was missing a cell phone on his belt, but the phone later resurfaced.  The Defendant asserts that his attorney should have investigated this matter further and should have inquired whether the officers at the scene had spoken to any of the individuals at the scene.  Further, the Defendant asserts that his attorney could have requested the names of all the individuals at the scene of the crime, deposed them, and discovered whether anything else was removed from the scene.  The Defendant argues that his attorney had a duty to investigate into the possibility that a hand gun was removed from the victim before the police arrived.  He also argues that counsel should have asked detective Colbert about the missing cell phone to determine how this item was ultimately recovered, because a hand gun would have been recovered the same way.  The Defendant argues that, had this alleged gun been recovered, the jury would have been more inclined to believe that he shot the victim in self-defense.

This claim hinges on the assumption that the victim did in fact have a hand gun at the scene of the murder.  However, this claim is completely speculative, as the Defendant does not assert that a handgun definitely existed.  Instead, the Defendant references "*possible* missing evidence" and never expressly states that he saw a handgun, only that "he believed the victim was reaching for a gun when he shot him."  The Defendant argues that his attorney should have interviewed the officers at the scene to determine if they had spoken to anyone.  If the officers had names of these individuals, then he argues that his attorney could have interviewed and deposed these unnamed individuals to see if

anyone had information about this alleged handgun.  The Defendant assumes that his attorney would have obtained information about a handgun from one of these unnamed individuals, and that the alleged gun could have been recovered.  This argument is completely speculative, and the Defendant has not demonstrated that there is a reasonable probability that such an investigation would have led to the recovery of a hand gun, assuming the victim even possessed a hand gun. Therefore, counsel cannot be deemed ineffective for failing to investigate, interview and depose multiple witnesses in the hopes that an alleged handgun *might* be found.  *See Kennedy v. State*, 547 So. 2d 912 9Fla. 1989) (conclusory and speculative allegations are insufficient to warrant an evidentiary hearing).

In any case, the Defendant's argument in his motion that the jury would have been more likely to believe his self-defense theory is rebutted by the record, as this was not the defense presented at trial. Instead, defense counsel argued that the Defendant had abandoned his intent to commit a robbery at the time he shot the victim, and thus he could not be guilty of felony murder.  (Tr. at 339-342.)  More specifically, counsel argued that he went to negotiate with the victim about a loan, and the Defendant got nervous and shot the victim. Defense counsel even stated during closing "[w]e're not claiming it was self-defense, even though he may have though[t] in his own mind that somehow his life was in danger." (Tr. at 338.) Thus, the Defendant has not demonstrated how he was prejudiced, as self-defense was never argued in this case.  Accordingly, Ground Five is denied.

(Ex. P, pp. 79-80).  The First DCA summarily affirmed.

The evidence on which petitioner bases this claim – the existence of several people around Mr. Patel's body when law enforcement arrived, the absence of Mr. Patel's cell phone which was later recovered, and petitioner's statements that he thought Mr. Patel had a gun – was all presented at trial.  Deputy Husar testified that he was the first officer to arrive on the scene and that there were numerous people around Mr. Patel's body when he arrived.  (Ex. B, pp. 117-118).  The lead crime

scene investigator, Lieutenant Colbert, testified at trial about the state of the crime scene and items recovered from the scene, including items found on or near Mr. Patel's body.  (Ex. B, p. 140).  The prosecutor questioned Lieutenant Colbert about the presence of any weapons:

> Q [Prosecutor]:  Any weapons on him [Mr. Patel], ma'am?
>
> A [Lieutenant Colbert]:  No, sir.
>
> Q:  When I'm talking about that I'm talking about not only just a firearm, but any knife or anything of that nature?
>
> A:  No, sir.

(Ex. B, p. 141).  On cross-examination, defense counsel asked Colbert if there was "any evidence at all that anyone had gone through his [Mr. Patel's] pockets looking for something?"  (*Id*., p. 141).  Lieutenant Colbert responded:

> A:  No sir.  The only thing that was sort of odd that night was on his belt he was missing a cell phone.  And at that time we didn't know if that meant anything.
>
> Q [Defense counsel]:  Did it surface somewhere else or –
>
> A:  It did.  It did surface later on and was accounted for.
>
> . . . .
>
> Q:  Did he have anything like a belly purse, a man purse or anything like that on his body?
>
> A:  No, sir.

(Ex. B, pp. 141-42).  Defense counsel questioned Captain Stanford, another law enforcement officer who responded to the scene, about the possibility of items being

taken from the crime scene:

> Q [Mr. Smith]:  And as far as we know, you asked about the cell phone, did you all ever find out if he had a cell phone, if it came up missing, what happened to it?
>
> A [Captain Stanford]:  I don't know.
>
> Q:  But as far as you know there was really no property taken from Mr. Patel?
>
> A:  Not that we could prove, no, sir.

(Ex. B, p. 184).

Petitioner faults trial counsel for failing to ascertain the identities of the people standing around Mr. Patel's body and for failing to interview those people concerning "the possibility of a missing hand gun."  (Doc. 7, p. A-9; Doc. 25, Ex. O, p. 60). "'[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary,'" but courts apply a strong presumption of reasonableness to counsel's investigation.  *Mitchell v. Kemp*, 762 F.2d 886, 888-89 (11th Cir. 1985) (*quoting Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066).  When "strategic choices [are] made after less than complete investigation [they] are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland* at 690-91.  Thus, at bottom, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances. . . ."  *Id*. at 691.  "In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the

quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527, 123 S. Ct. 2527, 2538, 156 L. Ed. 2d 471 (2003).  "[T]o be effective a lawyer is not required to 'pursue every path until it bears fruit or until all hope withers.'" *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999) (*quoting Foster v. Dugger*, 823 F.2d 402, 405 (11th Cir. 1987)).

Given the information known to counsel, including that which petitioner alleges he provided, counsel reasonably could have appraised petitioner's claim of a "possible missing hand gun" as having dismal prospects for success.  In order for a bystander to have information about a hand gun that was "missing" from the crime scene, the bystander would first have had to have seen the gun at the crime scene. Petitioner alleges no facts that anyone saw a gun (other than the one petitioner used) at the crime scene.  Neither petitioner, nor the other eyewitness to the shooting (Ms. Lasley), nor the store clerk (Ms. LeFurge) who immediately ran to and stayed by Mr. Patel's body until law enforcement arrived, nor any of the officers who arrived on the scene, testified to seeing Mr. Patel with a gun at the time of the shooting or to seeing a gun on or near Mr. Patel's body after the shooting.  (*See* Ex. B, pp.  269-274, 289-294, 308-309 (petitioner's testimony); Ex. B, pp. 105-114 (Ms. Lasley's testimony); Ex. B, pp. 93-105 (Ms. LeFurge's testimony)).  Petitioner himself never claimed to have seen such a gun.  Instead, petitioner told counsel (and testified at trial) merely that he <u>thought</u> Mr. Patel had a gun because of the prior incident between Timothy Dodson and Mr. Patel where Dodson said "he's got a gun."  *See* Discussion of Ground Two, *supra*.  However, petitioner admitted on cross-examination at trial that even during the incident between Dodson and Patel, petitioner never saw Mr. Patel

with a gun.  (Ex. B, p. 286).

Thus, it was reasonable for the state courts to conclude that counsel was not ineffective for declining to investigate petitioner's speculation that Patel had a gun (which petitioner never saw) which someone  removed from the crime scene in plain view of others, including law enforcement.  It was also reasonable for the state courts to conclude that petitioner's allegations failed to establish a reasonable probability that further investigation <u>would</u> have (not merely <u>could</u> have) produced admissible evidence that Mr. Patel had a gun, or a reasonable probability that further investigation would have produced additional admissible evidence – that is, evidence beyond what the jury already heard – sufficient to undermine confidence in the jury's verdict.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Five.

<u>Ground Six</u>   "<u>Whether The States Court's Denial Of Petitioner's Claim Of Ineffective Assistance Of Counsel Was Contrary To, Or An Unreasonable Application Of Clearly Established Federal Law Where Trial Counsel Fail[e]d To Alert The Court That The Petitioner Was Under The Influence Of Psychotropic Medication And Fail[e]d To Request Explanatory Instruction About The Side Effects Of Said Mediation To The Jury As Mandated By Florida Statute Thus, Depriving Petitioner Of His Guaranteed Rights Of Due Process Of Law And Effective Assistance Of Counsel, Violating The 5th, 6th, and 14th Amendments Of The United States Constitution.</u>"  (Doc. 1, pp. A-11 - A-12).

Petitioner alleges he advised defense counsel that the Bay County Jail's physician placed petitioner on psychotropic medication ("Rimeral") after he was

arrested. Petitioner asserts that once counsel became aware of this fact, counsel was obligated under Florida Rule of Criminal Procedure 3.215(c)(2), to request a jury instruction on the possible side effects of petitioner's taking psychotropic medication. (*Id.*, p. A-13). Petitioner argues that "[p]rejudice has been proven where the jury was never informed of this information." (*Id.*, p. A-14).

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground Six of his amended postconviction motion and by appealing the denial of relief to the First DCA. (Doc. 23, p. 38). Respondent asserts that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. (*Id.*, pp. 38-41).

<u>Review of State Court Decision</u>

In Ground Six of his amended postconviction motion, petitioner alleged that defense counsel advised him that it would be in his best interest to testify at trial. Petitioner alleged that the medication affected his credibility as a witness, because it "affected his responses and manner while testifying in that he had trouble understanding the question posed to him." (Ex. O, p. 62). Petitioner asserted that the effect of his medication "is apparent as shown when the court inquired of the defendant if he was under the influence of any medication." (*Id.*). Petitioner stated that he responded "no" to the judge's question, but asserted that his response was a result of his misunderstanding the question to mean "medication such as pain, blood pressure, or illegal drugs." (*Id.*). Petitioner faulted defense counsel for failing to

correct petitioner's response by notifying the court that petitioner was taking Rimeral. (*Id.*).

The state identified *Strickland* as the controlling legal standard and denied relief on petitioner's claim, as follows:

> In Ground Six, the Defendant alleges ineffective assistance of counsel for failing to inform the Court that the Defendant was under the influence of psychotropic medication, and also failing to request that an explanatory instruction be given to the jury pursuant to Rule 3.215. The Defendant argues that counsel advised him that it would be in the Defendant's best interest to testify. However, the Defendant asserts that his psychotropic medication affected his credibility as a witness, affecting his response and manner while testifying and making it difficult to understand the questions. The Defendant also asserts that he was confused when asked by the Court whether he was taking any medication and claims that he answered "No" because he believed the Court meant "pain, blood pressure, or illegal drugs." He asserts that it was counsel's duty to correct him and inform the Court that the Defendant was taking psychotropic medication, and that counsel's failure to provide truthful answers to the Court was ineffective assistance. The Defendant states that had counsel informed the court and requested an explanatory instruction, the jury would have thoroughly examined his testimony and returned a verdict of second degree murder.
>
> First, with regard to the Defendant's claim that he was under any psychotropic medication, there is no corroborating evidence that this claim is true. The record does not contain a request for a competency hearing or any indication that counsel or the Court was ever concerned about the mental state of the Defendant or his ability to proceed to trial. The Defendant does not even allege in his motion that he was only able to proceed to trial with the aid of such medication. Therefore, it does not appear that there would have been any reason to provide such an instruction. *See Alston v. State*, 723 So. 2d 148, 158 (Fla. 1998) (holding that the plain language of rule 3.215(c)(2) requires an

instruction on psychotropic medication only when the defendant's ability to proceed to trial is because of the medication; the simple assertion that the defendant is on psychotropic medication is not enough to trigger the rule).  Further, it does not appear that the Court even inquired about any medication prior to allowing [the] Defendant to testify as the Defendant described in his motion. (*See* Tr. at 262.)  Thus, any assertion that counsel was ineffective for allowing false answers to be given to the Court is rebutted by the record.  Moreover, during the colloquy, the Defendant confirmed that he had spoken to his attorney about testifying, understood that he had a right to remain silent, that if he testified he could be subject to an aggressive cross-examination by the State, and that he still wanted to testify.  (Tr. at 262-64.)

In any case, the Defendant has not established that he was prejudiced to the point that the outcome of the trial would have been different.  The Defendant states that the jury would have more likely believed his testimony if they had been informed that he was on medication, and they would have instead convicted him of second degree murder.  However, his confession was introduced during the trial (Tr. at 167-179), and multiple witnesses testified that the Defendant and his girlfriend had been planning to rob the victim during the weeks prior to and even on the day of the shooting (Tr. at 33-37; 46-50).  Further, an eyewitness testified to viewing an argument between the victim and Defendant resulting in the shooting, and another witness placed the Defendant at the scene of the crime and provided incriminating statements that the Defendant intended to rob the victim.  (Tr. at 107-112; 67-73)  The Defendant even admitted during his testimony that he went to the store intending to rob the victim and acknowledged that he shot the victim.  (Tr. at 269-73; 282; 294; 306-309.)  Had counsel requested that the jury be informed that the Defendant was allegedly on psychotropic medication, it is unlikely that this fact would have improved the credibility of his testimony or changed the outcome of the trial.  Thus, the Defendant has not demonstrated that counsel was ineffective for failing to request such an explanation or that he was prejudiced.  Accordingly, Ground Six is denied.

(Ex. P, pp. 80-81).

In his federal habeas petition, petitioner concedes that "the state court is correct in that the trial court never inquired of Petitioner about any medication prior to allowing him to testify." (Doc. 7, p. A-12). Accordingly, the state court's factual findings on that aspect of petitioner's claim are undisputed, and the state court's rejection of petitioner's claim concerning counsel's failing to correct petitioner's alleged false or incorrect response is reasonable.

To the extent petitioner faults trial counsel for failing to recognize that petitioner's taking of psychotropic medication undermined his competency to stand trial (in violation of due process) and for failing to raise a competency issue, the state courts' rejection of petitioner's claim was consistent with clearly established federal law. Although due process may bar trial of a defendant who is incompetent, *see Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 838, 15 L. Ed. 2d 815 (1966), "[t]reatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992)[3] (*citing Price v. Wainwright*, 759 F.2d 1549, 1555 (11th Cir. 1985)). Absent a showing that petitioner either told counsel, or exhibited signs that would cause a reasonable attorney to believe, that petitioner lacked the ability to consult with counsel with a reasonable degree of rational understanding or that petitioner did not understand the

---

[3]In *Sheley*, the court rejected the petitioner's claim that his ingestion of psychotropic drugs before he entered his guilty plea in state court rendered the plea involuntary. *Id.*, 955 F.2d at 1437-39. "[A] '[petitioner] must present evidence demonstrating that the dosage [of anti-psychotic medication] given him affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him.'" *Id.*, 955 F.2d at 1438-39 (*quoting Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987)). The court found that Sheley failed to present sufficient evidence to support his claim that his "medication caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." *Id.*, 955 F.2d at 1439.

proceedings against him, petitioner fails to establish that counsel was unreasonable for failing to perceive and bring to the trial court's attention the issue of petitioner's medication or competence.  *See Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788 4 L. Ed. 2d 824 (1960) (holding that the standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." (internal quotation marks omitted)).

To the extent petitioner faults trial counsel for failing to request a jury instruction that he was on psychotropic medication, the state courts' rejection of that claim was reasonable.  The state courts' conclusion that petitioner was not entitled to a jury instruction under Fla. R. Crim P. 3.215(c)(2), was reasonable based on Florida precedent.  *See* Fla. R. Crim. P. 3.215(c)(2) ("If the defendant proceeds to trial with the aid of medication for a mental or emotional condition, on the motion of defense counsel, the jury shall, at the beginning of the trial and in the charge to the jury, be given explanatory instructions regarding such medication."); *Alston v. State*, 723 So.2d 148, 158 (Fla. 1998) ("The plain language of the rule [Fla. R. Crim P. 3.215(c)(2)] requires an instruction on psychotropic medication only when the defendant's ability to proceed to trial is because of such medication.").  This court will not second guess the state courts on matters of state law.  *See, e.g., Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must

defer to the state's construction of its own law.") (citations omitted);[4] *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state-law-based objection; holding that the Florida Supreme Court's conclusion that  the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (*quoting Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir.1997)).

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Six.

---

[4]*Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F.  App'x 806 (11th Cir. 2007).

Ground Seven          "Whether The Denial Of Petitioner's Claim Of Ineffective Assistance Of Counsel For Counsel's Failure To File A Motion To Suppress Petitioner's Coerced Confession Is Contrary To, Or Involves An Unreasonable Application Of Clearly Established United States Supreme Court Precedents Thus, Violating Petitioner's 5th, 6th, And 14th Amendments Of The United States Constitution." (Doc. 7, p. A-14).

Petitioner faults trial counsel for failing to move to suppress his confession to Captain Stanford.  Petitioner alleges he informed trial counsel "that law enforcement officers of Bay County, Florida Sheriff's Department use[d] coercion and deception to obtain a confession from him." (Doc. 7, pp. A-14 - A-15).  Petitioner elaborates that his confession "was alter[ed] from the true statement that Petitioner provided upon his initial arrest due to the coercion and deceit of law enforcement." (*Id*., p. A-15).  Petitioner asserts he was prejudiced by counsel's failure to file the motion, because had his confession been suppressed he would not have felt obligated to testify at trial.  (*Id*., pp. A-15 - A-17).

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground Seven of his amended postconviction motion and by appealing the denial of relief to the First DCA.  (Doc. 23, p. 43).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  (*Id*., pp. 43-46).

<u>Review of State Court Decision</u>

In Ground Seven of his amended postconviction motion, petitioner alleged he told defense counsel that:  (1) in an unrecorded statement to police, he (petitioner) gave a truthful statement as to what happened, (2) that he was told if he changed his story to conform to what police wanted him to say the incident would be considered an accident and he would go home and (3) that his recorded confession to Captain Stanford, which was played at trial, was the product of this "trickery." (Ex. O, pp. 65-66).  Petitioner's state postconviction motion did not identify which officer coerced petitioner, what the officer told petitioner to say, or what specific statements in petitioner's recorded confession were untrue.   Petitioner alleged merely that he informed his attorney "numerous times" what happened, and claimed counsel was ineffective for failing to investigate petitioner's story of coercion by interviewing or deposing Captain Stanford and Investigator Bailey.  Petitioner argued that counsel's failure to make a reasonable investigation constituted an "actual and constructive denial of counsel altogether therefore prejudice must be presumed." (Ex. O, p. 66).  Petitioner argued that because there was a "possibility" of suppression, it could not be said that counsel's error was harmless.  (*Id*.).

The state circuit court identified *Strickland* as the controlling legal standard and denied relief on petitioner's claim, as follows:

> In Ground Seven, the Defendant alleges ineffective assistance of counsel for failing to file a motion to suppress his confession.  The Defendant asserts that his confession was altered and obtained through coercion and deception.  More specifically, the Defendant alleges that he initially told law enforcement the truth during a prior unrecorded statement, but was promised that the incident would be considered an accident if he gave a taped statement containing what they wanted him to say.  The Defendant states that he gave an altered recorded statement

to police.  He also asserts that he told his attorney that this statement was coerced numerous times, but his attorney failed to act on this information.  The Defendant does not specifically allege prejudice, but requests that prejudice is presumed because of "an actual and constructive denial of counsel altogether."

The Defendant argues that the record clearly shows that the confession was coerced, and points to a portion of his confession that demonstrates an earlier conversation about the incident.  (Tr. at 172.)  However, this does not prove that officers coerced the Defendant into altering his statement, only that a prior discussion took place.  In fact, Captain Jimmy Stanford testified that the Defendant was read his *Miranda* rights and signed a waiver prior to talking with law enforcement and that he was not promised anything or coerced into giving his statement.  (Tr. at 160-165.)

The record demonstrates that the Defendant and his attorney argued about filing a motion to suppress at an earlier pre-trial hearing.  (*See* Transcript of Hearing held on March 17, 2009.)  The Defendant asserted that his confession was coerced by police and that he communicated this to his attorney several times.  (Tr. at 9.)  Defense counsel stated on the record that there were no grounds for suppression, since the Defendant had waived his *Miranda* rights and no evidence of police misconduct existed.  (Tr. at 10.)  He also noted that the Defendant had voluntarily given an interview to the newspaper, and there was no way to suppress that statement either.  (Tr. at 7.)  Even if the recorded confession had been suppressed, the Defendant's statement to the newspaper would have established that he went to the convenience store intending to get money [from] the victim.  Furthermore, the Defendant even testified at trial that he went to the convenience store with the intention of robbing the victim.  (Tr. at 269-73; 282; 294; 306-309.)  Thus, the suppression [of] the custodial interrogation would not have changed the outcome of the trial.  The record shows that the Defendant and his attorney had clearly discussed this matter, and his attorney in his professional judgment made the decision that there were no grounds for a motion to suppress.  Thus, the Defendant's claims are without merit.

Accordingly, Ground Seven is denied.

(Ex. P, pp. 81-82).  The First DCA summarily affirmed.

As with petitioner's other grounds for relief, the specific attorney error petitioner alleges here  – failure to investigate and file a motion to suppress – is judged under the *Strickland* standard, not the *Cronic* standard.  *Bell v. Cone*, 535 U.S. at 697-98; *Castillo, supra*.

The state courts reasonably concluded that counsel made a reasonable investigation of petitioner's confession and that counsel's decision not to file a motion to suppress was within the wide range of professionally competent assistance.  At the March 17, 2009, pretrial conference, after petitioner complained that defense counsel had not filed any motions and had told petitioner there was nothing he could do for him, the trial judge asked defense counsel what he had done to prepare petitioner's case.  Counsel replied:

> MR. SMITH:  Well, Judge, I'm dealing with a Mirandized confession. I'm also dealing with an account that the defendant gave to the News Herald detailing the events, so we're faced, basically, he's being prosecuted by his own statements.  I don't see any ground to have his statement suppressed.  There's really no basis to, to suppress a, a voluntary statement that he gave to the News Herald.
>
> He's charged with felony murder.  Felony murder is the prosecutor's best friend.  It is easy to prove felony murder in the State of Florida.  I wish it weren't, but it is.  I've tried probably a dozen robbery, first degree felony murder cases.  I have never successfully defended a robbery, first degree felony murder case.  Perhaps there's lawyers out there who have successfully defended one.  I haven't.  So, I'm just telling him what the odds are.  The odds aren't very good and the chances are, I would say it's a  high probability he'll be convicted of first degree felony murder.

THE COURT:  Have you completed all your discovery in the case?

MR. SMITH:  We, we're still waiting on a few tidbits, but essentially 90 percent of the case is his statement, and there's nothing I can do to ameliorate the, the effect of that.

He says in his statement he went there to rob the man.  He didn't mean to kill him.  I believe him.  He didn't mean to kill him.  But Florida law says we don't care.  So that's that's the cards I'm dealt.  You know, we'll go to trial, we'll do the best we can, maybe I can convince the jury not to convict him of first degree felony murder, but the State's offered no plea, plea bargain.  There's not gonna be one, and we don't have any choice.  You know, I wish I didn't have to try the case, but at this juncture we, we have no alternative.

THE COURT:  I haven't heard anything yet that tells me that his performance has been deficient in any way.  And what I do hear is some candor from him about the circumstances that he's having to deal with.  Now, you may not like that, but you, he's obligated to tell you the truth.  He's not obligated to make you fell better.

THE DEFENDANT:  I understand that.

. . . .

THE COURT:  So, what, what motions would you have him file?

THE DEFENDANT:  I was coerced when I gave that statement.

THE COURT:  Which one?

THE DEFENDANT:  The first one.  Not the statement that I gave to the newspaper.  That was the truth.

THE COURT:  Okay.  And so you, you contend you were coerced in your statement to the police?

THE DEFENDANT:  Correct.

THE COURT:  All right.  And I'm sure you've communicated that to Mr. Smith.

THE DEFENDANT:  I told him several times.

THE COURT:  Okay.  Have you calculated that into your analysis?

MR. SMITH:  I have.

. . . .

THE COURT:  So, you're thinking that he should file a Motion to Suppress your statement cause you were coerced?

THE DEFENDANT:  Correct.

THE COURT:  And what do you think about that, Mr. Smith?

MR. SMITH:  Well, he needs to read *Colorado versus Connlley*, [sic] which precludes a Motion to Suppress an involuntary statement absent police misconduct, and there is no police misconduct.  As I, as I was explaining to him earlier, they didn't pistol whip him and they didn't attach a battery to his testicles, and they read him his rights, so they, they played by the rules, and they do that, and there's no such thing as an involuntary confession.

(Ex. P, pp.  299-302).

Counsel made his decision not to file a motion to suppress after listening to petitioner's claim of coercion, reviewing the relevant discovery (including the *Miranda* waiver petitioner signed and the recording of petitioner's confession) and reviewing the newspaper interview petitioner gave.  Petitioner faults trial counsel for failing to interview or depose Captain Stanford before making his decision, but the

record reveals that a deposition would not have made a suppression motion more viable.  Captain Stanford's trial testimony is representative of what his testimony at a deposition or suppression hearing would have been.   Stanford testified that petitioner was first read his *Miranda* rights when he was apprehended at the home of Anna Nichols.  (Ex. B, pp. 159-160).  Petitioner was then taken to the Bay County Sheriff's Office where he met with Captain Stanford.  Captain Stanford described the circumstances of petitioner's <u>second</u> *Miranda* warning, his waiver of his *Miranda* rights, and his confession:

> Q [Prosecutor]:  Tell us what happened once you got, "you" being the Sheriff's department, got Nicholas Lee there to the Sheriff's department.  Did you attempt to interview him?
>
> A [Captain Stanford]:  Yes.  Investigator Bailey and I went into one of our interview rooms.  He was read his Miranda rights from a preprinted Miranda rights form.  He waived those rights and signed the form.  We then begin an interview with him, Investigator Bailey and myself.
>
> Q:  Did he agree to talk to both of you?
>
> A:  He did.
>
> Q:  Did both of you remain in the room?
>
> A:  No, sir.  At first Mr. Lee denied anything, going to the store, denied any involvement with anything.  When confronted with a couple of facts he asked that Investigator Bailey leave the room and just speak to me.  When Investigator Bailey left the room then he admitted that he had participated in the robbery which resulted in Mr. Patel being shot and killed.
>
> Q:  Was a recording made of this?

A:  A formal statement was taken from him, yes, sir.

Q:  You say formal statement.  Recording was made of that, sir?

A:  Yes.

Q:  Then was that statement also transcribed?

A:  Yes, it was.

(Ex. B, pp. 161-62).  The *Miranda* rights form petitioner signed was admitted into evidence.  (*Id.*, p. 162).  The *Miranda* rights form advised petitioner of the following:

> Before we ask you any questions you must understand your rights.  You have the right to remain silent.  Anything you say can be used against you in court.  You have the right to talk to a lawyer for advice before we ask you any questions and have him with you during any questioning.  If you cannot afford a lawyer one will be appointed for you before any questioning, if you wish.  If you decide to answer questions now without a lawyer present you will still have the right to stop answering at any time.  You also have the right to stop answering at any time until you talk to a lawyer.

(Ex. B, p. 163).  Captain Stanford asked petitioner if he understood the foregoing, and petitioner stated he did.  (*Id.*).

In the section of the *Miranda* rights form titled "Waiver of rights," petitioner signed after the following statement:

> I have read this statement of my rights and I understand what my rights are.  I am willing to make a statement and answer questions.  I do not want a lawyer at this time.  I understand and know what I am doing.  No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

(Ex. B, pp. 163-64) (emphasis added).  Captain Stanford asked petitioner if he understood the foregoing, petitioner stated he did and then signed the form.  (*Id.*, p.

164).

At trial, the prosecutor asked Captain Stanford:  "Did you make any promises or did you threaten him [petitioner] in any way in order to get him to talk to you that night?  (*Id.*, pp. 164-65).  Captain Stanford responded, "I did not."  (*Id.*, p. 165).  Petitioner's confession was played for the jury.  At the beginning of petitioner's recorded statement is the following exchange:

> Q [Captain Stanford addressing petitioner]:  . . . Nick, is the statement you're about to give the truth, the whole truth and nothing but the truth, so help you God?
>
> A [Petitioner]:  Yes, sir.

(Ex. B, p. 168).

At trial, petitioner testified about the circumstances surrounding his confession to Stanford as well as his subsequent statement to a newspaper reporter.  When the prosecutor asked petitioner about his recorded statement to Stanford, petitioner twice made the conclusory assertion that he "was coerced" into making the statement.  (Ex. B, pp. 295, 296).   When the prosecutor asked petitioner about his signing the *Miranda* waiver, petitioner testified that he signed the waiver, "[b]ecause I wanted it to be accidental.  The truth."  (*Id.*, pp. 297-98).  Petitioner admitted that the statement he gave to the newspaper reporter was substantially the same as his confession to police.  (Ex. B, pp. 302-05).  Petitioner attempted to explain his incriminating statements to the reporter by claiming the reporter misquoted him.  (*Id.*, p. 303).

Viewing the record as a whole, a reasonable attorney could surely conclude that a motion to suppress on grounds of coercion, the specifics of which were never described at the trial level, had no chance of success.  The only evidence petitioner

offered to support his claim of coercion was:  (1) the fact that he initially denied everything, including being outside Mr. Patel's store that evening, and (2) his conclusory, after-the-fact assertion that he "was told that if he changed his statement to what they wanted him to say then the incident would be considered an accident." (Ex. O, p. 65).  As noted by the state court, petitioner's initial denial, in and of itself, does not evidence coercion, trickery, or any other police misconduct.  This is especially true here, where the change in petitioner's story came after law enforcement confronted petitioner with contrary information from their investigation. Further, petitioner's assertion of a promise was not only vague (petitioner did not identify which officer made the promise or what that officer told him to say), it was contrary to petitioner's prior statement on the waiver form that "[n]o promises or threats have been made to me and no pressure or coercion of any kind has been used against me, it was contrary to petitioner's affirmation under oath that his confession was "the truth, the whole truth and nothing but the truth," it was contrary to petitioner's having made a voluntary statement to a newspaper reporter consistent with his confession, and it was contrary to Captain Stanford's testimony that he did not promise petitioner anything in exchange for his statement or coerce him in any way.  The fact that petitioner hoped his version of the shooting would be regarded as an accident provided no basis to suppress his statement or to conclude that petitioner was coerced or tricked into making his statement.

This court cannot say that no "fairminded jurist could agree" with the state court's determination that given the information known to counsel, counsel was not unreasonable in failing to depose Captain Stanford or in declining to file a motion to

suppress.[5]  The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Seven.

Ground Eight        "Whether The State Court's Denial Of Petitioner's Claim Of Violation Of Due Process Of Law And Ineffective Assistance Of Counsel Where Trial Counsel Conceded Petitioner's Guilt Without His Consent Is Contrary To Clearly Established United States Supreme Court Precedent Thus, Violating Petitioner's 5th, 6th, And 14th Amendments Of The United States Constitution."  (Doc. 7, p. A-17).

Petitioner faults trial counsel for conceding petitioner's guilt on the marijuana possession charge in closing argument, without obtaining petitioner's consent.  (Doc. 7, pp. A-18 - A-19).  In concluding his closing argument, defense counsel stated:

> [I]n the end you have to be convinced beyond and to the exclusion of all reasonable doubt that the events unfolded and occurred just as the State has asserted.  Their proof has to leave no doubt on that issue.  And we claim that there is doubt and that that doubt should be resolved in Mr. Lee's favor and that you should return verdicts on Count I of either second-degree murder or manslaughter; on Count II, not guilty because there was no attempt to rob at the point that the killing occurred.  In Count III, of course, he is guilty of having marijuana.

(Ex. B, p. 342).  Petitioner contends that counsel should have instead argued to the jury that "the court had not qualified 'anyone as an expert' concerning marijuana, exspecially [sic] Petitioner.  Counsel should have argued the state had failed to prove count three so the jury should find the Defendant not guilty of that count."  (Doc. 7,

---

[5]Petitioner also has not shown that a motion to suppress had a reasonable likelihood of success.  A mere "possibility" of success, as petitioner asserted in his postconviction motion (Ex. O, p. 66), is not sufficient to establish actual prejudice under *Strickland*.

p. A-18).

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground Eight of his amended postconviction motion and by appealing the denial of relief to the First DCA. (Doc. 23, p. 47). Respondent asserts that petitioner is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim was neither contrary to, nor an unreasonable application of *Strickland*, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. (*Id*., pp. 47-49).

<u>Review of State Court Decision</u>

The state circuit court identified *Strickland* as the controlling legal standard and denied relief on petitioner's claim, as follows:

> In Ground Eight, the Defendant alleges that counsel was ineffective for conceding the Defendant's guilt on Count III of the information without his consent. The Defendant was charged with possession of marijuana over 20 grams. Counsel allegedly conceded guilt on this count, which was a third degree felony. However, the Defendant states that he never consented to counsel's actions. The Defendant claims that the State had not proven their case on the possession charge, and he was taken by surprise when counsel stated during closing arguments that he was guilty. Had counsel not conceded his guilt, the Defendant argues that the jury would have found him not guilty.
>
> The Defendant cannot prove prejudice, as he admitted to possessing marijuana over twenty grams. Both Captain Stanford and Detective Bailey testified that the Defendant possessed marijuana when he was arrested (Tr. at 179-80; 197-98), and the Defendant even stated during his taped confession that he traded the murder weapon for the drugs (Tr. at 176-78). As discussed above in Ground Three, trial

counsel moved for judgment of acquittal on the possession charge based on the State's failure to establish that the substance was actually marijuana. (Tr. 258-61.) However, the Defendant admitted during his testimony that, on the morning after the murder, he gave Captain Stanford the marijuana that he had received in exchange for the gun. He also acknowledged that it was "way over twenty grams" *Id.* at 275-76. Thus, the Defendant was not prejudiced by counsel conceding guilt on Count III during closing, as the Defendant himself admitted to this offense. Accordingly, Ground Eight is denied.

(Ex. P, p. 82). The First DCA summarily affirmed.

As an initial matter, petitioner is incorrect as a matter of law when he states in his habeas petition that the state court "conced[ed]" he met *Strickland*'s performance prong by not ruling that he failed to satisfy that prong. (*See* Doc. 7, pp. A-17 - A-18). A court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. The state court's silence with regard to the performance prong does not equate to a ruling or "concession" that petitioner met that prong.

The state court reasonably concluded that there is no reasonable probability petitioner would have been acquitted of possessing marijuana had counsel argued to the jury that they should find petitioner not guilty because the State failed to present expert testimony identifying the substance. There was overwhelming evidence – presented through Captain Stanford's testimony, Investigator Bailey's testimony, petitioner's confession and petitioner's trial testimony – establishing that the substance petitioner possessed and turned over to Captain Stanford was marijuana. This evidence makes it certain that petitioner would have been convicted of possessing marijuana even if counsel had not conceded his guilt. Further, although not mentioned by the state court, the record reflects that defense counsel's concession

of guilt was a wise tactical decision designed to garner credibility with the jury. Faced with a client who had confessed to a killing, only a reckless lawyer would have made a technical issue of the minor drug possession charge.  Because petitioner admitted possessing the marijuana, conceding guilt on that charge might have been one of few options available to make the trial defense more credible in the eyes of the jury, which was undoubtedly focused upon the more serious charges of first degree felony murder and attempted robbery.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Nor was the decision based on an unreasonable determination of the facts.  Viewed in the context of the entire case, this argument truly approaches nonsensical.  Petitioner is not entitled to federal habeas relief on Ground Eight.

| | |
|---|---|
| Ground Nine | "Whether The State Court's Denial Of Petitioner's Claim Of Cumulative Error Of Ineffective Assistance Of Counsel Is Contrary To, Or Involves An Unreasonable Application Of Clearly Established Federal Law As Set Forth By The United States Supreme Court Thus, Violating Petitioner's 5th 6th, And 14th Amendments Of The United States Constitution."  (Doc. 7, p. A-19). |

Petitioner's final claim is that because he has shown that the state courts "are incorrect in their rulings denying Petitioner relief" on Grounds One through Eight, the state courts' denial of his cumulative error claim "has created a manifest injustice and has violated Petitioner's 5th, 6th, and 14th Amendments of the United States Constitution."  (Doc. 7, pp. A-19 - A-20).

Respondent concedes that petitioner exhausted this claim by presenting it to the state circuit court as Ground Nine of his amended postconviction motion and by

appealing the denial of relief to the First DCA.  (Doc. 23, p. 49).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the United States Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims, and because none of the alleged errors considered alone approaches the threshold standard of ineffective assistance of counsel and, therefore, taken together the cumulative effect of counsel's conduct also falls far short of depriving petitioner of effective assistance of counsel. (*Id.*, pp. 50-53).

This court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state courts' adjudication on the merits was contrary to or an unreasonable application of clearly established federal law.  It is enough to say that petitioner has not shown an error of constitutional dimension with respect to any of his ineffective assistance claims.  Therefore, he cannot show that the cumulative effect of counsel's alleged errors deprived him of his constitutional rights in the state criminal proceeding. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law; holding instead that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *see also, e.g., Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. Aug. 21, 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel, and holding that petitioner's cumulative error argument lacked

merit because he did not establish prejudice or the collective effect of counsel's error on the trial).

Petitioner's claim of cumulative error does not warrant federal habeas relief.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 7), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Nicholas Tyrone Lee*, Bay County, Florida, Circuit Court Case Number 08-CF-3811, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of July, 2014.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).